# EXHIBIT 4



Dream Yacht Charter
1st Floor, THE FLORE, Rue Dairy
Floréal, Mauritius
Web: www.dreamyachtcharter.com
Email: dreamyacht@dreamyachtcharter.com
Tel: +230 452 9178

**Your contract 18090296**

Date: 19 Jul 2018



Between:
**From one side, hereafter called the yacht Charter Company**
**Dream Yacht Charter**
1st Floor, THE FLORE, Rue Dairy
Floréal, Mauritius

**From the other side, hereafter called the Charterer**
Customer: **Cummings**
, USA

The yacht charter company puts at Charterer's disposal, the boat at the indicated prices and dates

| Description | |
|---|---|
| Charter code: | 18090296, **Cummings** |
| Boat type: | Lagoon 620 Crewed - Super Premier |
| Embarkation port: | Tortola(22 Jun 2019, Embarkation : 05:00 PM) |
| Disembarkation port: | Tortola(29 Jun 2019, Disembarkation : 10:00 AM) |
| Your charter consists of 8 day(s) / 7 night(s) | |
| **Total charter fee** | |
| **Exchange fees**: | |

**Prepared by:** Erin Minner

Parties agree to have read charter general and particular conditions plus all those included in usual commercial documents.

THE CHARTER COMPANY
Date : 16/06/2019

**DREAM YACHT CHARTER**
Block 3, Medine Business Park
Royal Road
CASCAVELLE - MAURITIUS
Tél : +230 452 9178
Fax : +230 452 9179

THE CHARTERER
Date : 22.06.19
Signature (Read and approved)

ASIA
CARIBBEAN
INDIAN OCEAN
MED SEA
PACIFIC OCEAN

HEAD OFFICE
1st Floor - THE FLORE - Rue Dairy, Floreal - MAURITIUS.
Tel : + 230 606 4123

EUROPEAN REPRESENTATIVE: DREAM YACHT MEDITERRANEE
Chemin departemental 18 - Marina Port Pin Rolland - 83430 Saint Mandrier sur mer
Tel: + 33 (0)4 94 62 31 67 - Fax: + 33 (0)4 94 94 77 24 - info@dreamyachtcharter.com

MEMBRE DE LA FEDERATION DES INDUSTRIES NAUTIQUES

## CHARTERING CONDITIONS DREAM YACHT CHARTER

### CLAUSE 1 AGREEMENT TO LET AND HIRE
The Owner agrees to let the yacht to the Charterer and not to enter into any other Agreement for the Charter of the Yacht for the same period.
The Charterer agrees to hire the Yacht and shall pay the Charter Fee, the Advance Provisioning Allowance and any other agreed charges, in cleared funds, on or before the dates and to the Account specified in this Agreement.

### CLAUSE 2 DELIVERY
The Owner shall at the beginning of the Charter deliver the Yacht to the Port of Delivery and the Charterer shall take delivery in full commission and working order, seaworthy, clean, in good condition throughout and ready for service, with full equipment, including up-to-date safety and live-saving equipment (including life-jackets for children if any are carried in the Charterer's Party), as required by the Yacht's registration authority and fitted out as appropriate for a Yacht of her size and type and enabling the Charterer to use the Yacht as set out in Clause 13. The Owner does not warrant her comfort in bad weather conditions for all cruises or passager within the Charter Area.

### CLAUSE 3 RE-DELIVERY
The Charterer shall re-deliver the Yacht to the Owner at the Port of Re-Delivery free of any debts incurred for the Charterer's account during the Charter Period and in as good a condition as when delivery was taken, except for fair wear and tear arising from ordinary use. The Charterer may, if he wishes, re-deliver the Yacht to the Port of Re-Delivery and Disembark prior to the end of the Charter Period but such early re-delivery shall not entitle the Charterer to any refund of the Charter Fee.

### CLAUSE 4 CRUISING AREA
The Charterer shall restrict the cruising of the Yacht to within the cruising Area and to within regions in the Cruising Area in which the yacht is legally permitted to cruise. The Charterer shall also restrict time under way to an average of six (6 hours) per day, unless the Captain, in his sole discretion, agrees to exceed this time.

### CLAUSE 5 MAXIMUM NUMBER OF PERSONS - RESPONSIBILITY FOR CHILDREN - HEALTH OF CHARTERER'S PARTY
a) The Charterer shall not at any time during the Charter Period permit more than the Maximum Number of Guests Sleeping or Cruising on Board plus, at the sole discretion of the Captain, a reasonable number of visitors whilst the Yacht is securely moored in port.
b) If children are taken on board, the Charterer shall be fully responsible for their safety, conduct and entertainment and no member of the crew shall be held responsible for their safety or entertainment.
c) The nature of a yacht charter may render it unsuitable for anybody with physical disability or undergoing medical treatment. By signature of this Agreement the Charterer warrants the medical fitness of all members of the Charterer's party for the voyage contemplated by this Agreement. The Charterer and his party undertake to have all necessary visas and vaccinations for the countries to be visited.

### CLAUSE 6 CREW
The Owner shall provide a suitably qualified Captain acceptable to the insurers of the Yacht and a suitably experienced Crew, properly uniformed, fed and insured. The Owner shall ensure that no member of the Crew shall carry or use any illegal drugs on board the Yacht or keep any firearms on board (other than those declared on the manifest) and shall ensure that the Captain and Crew comply with the laws and regulations of any country into whose waters the Yacht shall enter during the course of this Agreement.

### CLAUSE 7 CAPTAIN-AUTHORITY
The Owner shall ensure that the Captain shows the Charterer the same attention as if the Charterer were the Owner. The Captain shall comply with all reasonable orders given to him by the Charterer regarding the management, operation and movement of the Yacht, wind, weather and other circumstances permitting. The Captain shall not, however, be bound to comply with any order which, in the reasonable opinion of the Captain, might result in the Yacht moving to any port or place that is not safe and proper for her to be in, or might result in the Charterer failing to re-deliver the Yacht upon the expiration of the Charter Period, or would, in the reasonable opinion of the Captain, cause a breach of Clause 13 and/or any other clause of this Agreement. Further, without prejudice to any other remedy of the Owner, if, in the reasonable opinion of the Captain, the Charterer or any of his Guests fail to observe any of the provisions in Clause 13 and if such failure continues after the Captain has given due and specific warning to the Charterer in writing in respect of the same, the Captain shall inform the Owner and the Broker(s) and the Owner may terminate the Charter forthwith or instruct the Charterer to return the Yacht to the Port of Re-Delivery and upon such return the Charter Period shall be terminated. The Charterer and his guests shall disembark, the Charterer having settled all outstanding expenses with the Captain beforehand and the Charterer shall not be entitled to be refunded any of the Charter Fee. With particular regard to the use of watersports equipment, as defined in clause 16, the Captain shall have the authority to exclude the Charterer or any or all of his Guests from use of any particular watersports equipment if, in his reasonable opinion, they are not competent, are unsafe, are behaving in an irresponsible manner, or are failing to show du concern for other persons when operating this equipment.

### CLAUSE 8 DELAY IN DELIVERY
a) If, by reason of force majeure (as defined in Clause 18 (a)), the Owner fails to deliver the yacht to the Charterer at the Port of Delivery at the commencement of the Charter Period and delivery made within forty-eight (48) hours of the scheduled commencement date, or within one tenth (1/10th) of the Charter Period, whichever period is shorter, the Owner shall pay to the Charterer a refund of the Charter Fee at a prorata daily rate or if it be mutually agreed the Owner shall allow a prorata extension of the Charter Period.
Failure to deliver
b) If, by reason of force majeure the Owner fails to deliver the yacht within forty-eight (48) hours or a period equivalent to one-tenth (1/10th) of the Charter Period, whichever period is the shorter, from the due time of delivery, the Charterer shall be entitled to treat this Agreement as terminated. The Charterer's exclusive remedy shall be to receive repayment without interest of the full amount of payments made by him to the Owner or Stakeholder. Alternatively, if the parties mutually agree, the Charter Period shall be extended by a time equivalent to the delay.
c) If the Owner fails to deliver the yacht at the Port of Delivery at the commencement of the Charter Period other than by reason of force majeure, the Charterer shall be entitled to treat this Agreement as repudiated by the Owner. The Charterer will be entitled to repayment without interest of the full amount of all payments made by him to the Owner or Stakeholder.

### CLAUSE 9 DELAY IN RE-DELIVERY
a) If re-delivery of the Yacht is delayed by reason of force majeure, re-delivery shall be effected as soon as possible thereafter and the meantime the conditions of the Agreement shall remain in force but without penalty or additional charge against the Charterer.
b) If the Charterer fails to re-deliver the Yacht to the Owner at the Port of the Re-Delivery due to intentional delay or change of itinerary against the Captain's advice, then the Charterer shall pay forthwith to the Owner by direct telegraphic transfer via the Broker/Stakeholder's Account demurrage at the daily rate plus forty percent (40 %) of the daily rate, and if delay in re-delivery exceeds twenty-four (24) hours, the Charterer shall be liable to indemnify the Owner for any loss or damage which the Owner shall suffer by reason of deprivation of use of the Yacht or cancellation of, or delay in delivery under, any subsequent charter of the Yacht.

### CLAUSE 10 CANCELLATION BY CHARTERER
a) Should the Charterer give notice of cancellation of this Agreement on or at any time before commencement of the Charter Period the Charterer shall remain liable for all payments due prior to and unpaid at the date of cancellation. Should notice of cancellation be given by the Charterer or should the Charterer fail after having been given notice to pay any amount payable under this Agreement the Owner shall be entitled to treat this Agreement as having been repudiated by the Charterer and to retain the full amount of all payments made by the Charterer.
RE-LET
b) Without prejudice to the Owner's remedies in (a) above, if the Owner is able to re-let the Yacht to another Charterer for all or part of the Charter period then the Owner or the Broker/Stakeholder on his behalf shall refund to the Charterer such net balance as is due to the Charterer after re-letting which is to be calculated upon the following basis :
The original Charter Fee, net of commissions, shall be deducted from the net hire for the Charter Period due to the Owner from the re-letting. To this figure is to be added all reasonable additional expenses, including commissions, incurred by the Owner on re-letting. The figure as calculated will be deducted from the monies actually received from the Charterer and any remaining credit balance due to the Charterer will be repaid. The intention is that the Owner shall not receive less in net proceeds from any re-letting than would have been received if the original Agreement had been fulfilled. The Owner shall use his best endeavours to re-let the yacht and shall not unreasonably withhold his agreement to re-let, although charters which may reasonably be considered detrimental to the yacht, its reputation, its crew or its schedule may be refused.

### CLAUSE 11 BREAKDOWN OR DISABLEMENT
a) If, after delivery, the Yacht at any time is disabled by breakdown of machinery, grounding, collision or other cause so as to prevent reasonable use of the Yacht by the Charterer for a period of not less than twelve (12) consecutive hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, and not more than forty-eight (48) consecutive hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, (and the disablement has not been brought about by any act or default of the Charterer), the Owner shall make a pro rata return of the Charter Fee from the date and time when the Yacht was disabled or became unfit for use. The Charterer shall remain liable for normal expenses during this period. If it be mutually so agreed, the Owner shall allow a prorata extension of the Charter Period. If the Charterer considers the circumstances justify the invoking of this Clause, he shall give immediate notice in writing to the Captain that he wishes to do so.
b) If, however, the Yacht is lost, or is so extensively disabled as aforesaid that the Yacht cannot be repaired within a period of forty-eight (48) hours or one-tenth (1/10th) of the Charter Period, whichever is the shorter, the Charterer may terminate this Agreement by notice in writing to the Owner or the Broker(s) or, if no means of communication is possible, to the Captain on the Owner's behalf, and as soon as practicable after such termination the Charter Fee shall be repaid by the Owner pro rata without interest for that part of the Charter Period remaining after the date and time that the loss or disablement occurred. In these circumstances the Charterer may effect Re-Delivery by giving up possession of the yacht where she lies. The Charterer may effect Re-Delivery by giving up possession of the yacht where she lies. The Charterer shall be entitled to recover from the Owner the reasonable cost of returning himself and his passengers to the Port of Re-Delivery by scheduled services, together with any accommodation expenses reasonably necessary for this purpose.
PLEASE INITIAL OWNER CHARTERER 2

### CLAUSE 12 USE OF THE YACHT
The Charterer shall use the Yacht exclusively as a pleasure vessel for the use of himself and his Guests. The Charterer shall ensure that no pets or other animals are brought on board the Yacht without the consent in writing of the Owner. The Charterer shall ensure that the behaviour of himself and his Guests shall not cause a nuisance to any person or bring the Yacht into disrepute. The Charterer shall comply, and shall ensure that his Guests comply, with the laws and regulations of any country into whose waters the Yacht shall enter during the course of his Agreement. The Charterer shall ensure that any bonded stores or other merchandise which may already be aboard the Yacht, or may be brought aboard the Yacht during the Charter, are cleared through Customs before being taken ashore. The Captain shall promptly draw the Charterer's attention to any infringement of these terms by himself or his Guests, and if such behaviour continues after this warning, the Captain shall inform the Owner or his Broker, and the Owner may, by notice in writing given to the Charterer, terminate this Agreement in accordance with Clause 7.of this Agreement.
If the Charterer or any his Guests shall commit any offence contrary to the laws and regulations of any country which results in any member of the crew of the Yacht being detained, fined or imprisoned, or the Yacht being detained, arrested, seized or fined, the Charterer shall indemnify the Owner against all loss, damage and expense incurred by the Owner as a result, and the Owner may, by notice to the Charterer, terminate this Agreement forthwith. It is also specifically understood that the possession or use of any illegal drugs or any weapons (including particularly firearms) shall be sufficient reason for the Owner to terminate the Charter forthwith without refund or recourse against the Owner.

## CLAUSE 13 NON ASSIGNMENT
The Charterer shall not assign this Agreement, sub-let the Yacht or part with control of the Yacht without the consent in writing of the Owner, which consent may be on such terms as the Owner thinks fit.

## CLAUSE 14 SALE OF THE YACHT
a) The Owner agrees not to sell the Yacht during the Charter Period as set out on Page One of this Agreement.
b) Should the Owner agree to sell the Yacht after signing of this Charter Agreement, but before delivery to the Charterer, the Owner shall immediately give notice of such sale in writing to the Charterer via the Broker. This information shall be kept in strict confidence by all parties to the Agreement. Should the vessel be sold one of the following provisions will apply:
i) The Owner shall arrange for the Buyer to take over the Charter Agreement and perform the Charter on the same terms and conditions, either by assignment of the original Charter or by way of a new Charter Agreement between the Charterer and the Buyer and written cancellation without penalty of the original Agreement.
Where the Charter is taken over by the Buyer on the same terms and conditions there shall be no penalty against the Owner and no additional commission due to the Broker.
ii) If the Buyer is unwilling or unable to fullfill the Charter Agreement, the Owner hereby appoints the Broker to procure the Charter of a replacement yacht of similar or superior standard and condition for the Charter period. If a suitable replacement vessel is found a new Charter Agreement shall be prepared and this original Agreement cancelled. The Owner shall pay the Broker's commission on the original Charter and the Broker may retain any commission due on the replacement yacht.
iii) Should the Owner be unable to obtain a similar or superior yacht for the use of the use of the Charterer on the same terms as this original Agreement or should the Charterer reject the proposed replacement (the Charterer shall not unreasonably reject a substitute yacht of same or superior standard) then this Charter Agreement shall be considered as having been cancelled by the Owner in accordance with Clause 9. All payments made by the Charterer shall be promptly repaid in full to him without deduction, and in addition liquidated damages calculated in accordance with clause 9 (e), i, ii, iii or iv as appropriate shall be paid. The Broker shall be paid by the Owner the full commission due on this original Agreement.

## CLAUSE 15 INSURANCE &CHARTER'S LIABILITY
a) The Owner shall insure the Yacht with first-class insurers against all customary risks for a Yacht of her size and type on Institute Yacht Clauses 1.11.85 or other recognised terms extended to provide Permission to Charter and to cover Third Party liability, Water Skiers liabilities together with liabilities arising from the use by the Charterer and other competent person(s) authorized by him of jetskis, surfjets, waveriders and other similar powered craft as well as windsurfers, dinghies, catamarans or other water-sports equipment carried by the Yacht. The insurance shall also cover War and Strikes and include insurance of crew against injuries and/or Third Party liabilities incurred during the course of their employment. The Charterer shall be entitled to the benefit of the Owner's insurances.
b) All such insurances shall be on such terms and subject to such deductibles as are customary for a vessel of the Yacht's size and type. Copies of all relevant insurance documentation shall be available for inspection by the Charterer prior the Charter on reasonable notice to the Owner, and shall be carried on board the Yacht.
c) Under normal circumstances the Charterer shall only be liable for such costs or losses as may be incurred repairing damage caused by the Charterer or his guests (intentionally or otherwise) to the Yacht or any third party up to the level of the Excess (Deductible) on the Owner's insurance policy for each separate accident or occurrence.
d) The Charterer may be liable for a sum greater than the Excess (Deductible) on any one accident or occurrence if the Charterer or any of his guests acted in such a manner (intentionally or otherwise) as to void, or limit, the cover under the Owner's insurance.
e) Charterer's Liability Insurance is not included in this Agreement but is available.
f) The Charterer shall carry independent for Personal Effects whilst on board or ashore and for any Medical or Accident expenses incurred other than as covered under the Yacht's insurance.
g) Cancellation and Curtailment insurance is not included in this Agreement but is available.

## CLAUSE 16 DEFINITIONS
A) FORCE MAJEURE
In this Agreement 'force Majeure' means any cause directly attributable to acts, events, non-happenings, omissions, accidents or Acts of God beyond the reasonable control of the Owner or the Charterer (including, but no limited to, strikes, lock-outs or other labour disputes, civil commotion, riots, blockade, invasion, war, fire, explosion, sabotage, storm, collision, grounding, fog, governmental act or regulation, major, mechanical or electrical breakdown beyond the crew's control and not caused by Owner's negligence). Crew changes do not constitute force majeure. Force majeure does not excuse the Owner from payment of commissions.
B) OWNERS, CHARTERERS AND BROKERS
Throughout the Agreement, the terms 'Owner', 'Charterer' and 'Broker' and corresponding pronouns shall be construed to apply whether the Owner, Charterer or Broker is male, female, or corporate, singular or plural, as the case may be.

## CLAUSE 17 SALVAGE
During the period of the charter, the benefits, if any, from all derelicts, salvages and towages, after paying the crew's proportion, hire for the relevant period and expenses, shall be shared equally between the Owner and the Charterer.

## CLAUSE 18 GOVERNING LAWS
Any legal action arising under or in connection with this contract will be adjudicated in Fort de France, Martinique.

## CLAUSE 19 COMPLAINTS
The Charterer shall give notice of any complaint in the first instance to the Captain on board and note shall be taken of the time, date and nature of the complaint.
If, however, this complaint cannot be resolved on board the Yacht then the Charterer shall give notice to the Owner or to the Broker, on the Owner's behalf as soon as practicable after the event giving rise to the complaint has taken place and anyway within twenty-four (24) hours of the event or occurrence unless it is impraticable due to the failure or non-availability of communications equipment. The complaint may be made verbally in the first instance but shall be confirmed as soon as possible in writing (by fax, telex or mail) specifying the precise nature of the complaint.

## CLAUSE 20 NOTICES
Any notice given or required to be given by either Party to this Agreement shall be communicated in any form of writing and shall be deemed to have been properly given if proved to have been dispatched pre-paid and properly addressed by mail or bona fide courier service or by fax or telex, in case of the Owner, to him or to the Broker at their addresses as per this Agreement or, in the case of the Charterer, to his address as per this Agreement or, where appropriate, to him on board the Yacht.

Signature: